EMPLOYMENT SECURITY BOARD *v.* MARYLAND DELIVERIES, INC.

[No. 163, October Term, 1953.]

534

*Decided May 24, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*James N. Phillips*, with whom were *Edward D. E. Rollins*, Attorney General, and *Herbert L. Cohen*, Special Assistant Attorney General, on the brief, for appellant.

*Morton E. Rome*, with whom were *Rome & Rome*, on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Superior Court of Baltimore City reversing a decision of the Employment Security Board of Maryland in connection with a claim of the appellee that it was entitled to an experience rating of .9% as a successor employer under the Unemployment Compensation Law. The facts are undisputed and may be briefly stated.

For reasons of economy and simplicity, Maryland Deliveries, Inc. was incorporated and began operations early in 1952, taking over the parcel delivery services of both The Hecht Company and the May Company. These companies operate large department stores in Baltimore, and each had an integrated service of this character. The new corporation took over the entire personnel and equipment of both companies, and purchased additional equipment from outside sources. The Hecht Company and The May Company own all of the stock of the new corporation, and control its operation by interlocking directors and executives. The more favorable pension plan of the two companies, and various other employees benefits, were extended to employees of the new corporation. Prior to the transfer each parent company had kept separate accounts covering the parcel delivery branch of its business.

The Board held that the parcel delivery departments of the parent companies which were transferred to the new corporation were not "readily definable" units, as required by the statute. Prior to 1947, the statute

required that for an employer to retain the experience rating of a predecessor, it was necessary that there be a transfer of the "entire business", but the present statute provides that it may be retained if an employer "shall transfer his entire business, or a department, section, division or any other substantial portion of the business, which is readily definable, by sale or otherwise, to another employing unit". The rate retained continues "from the date the transfer occurred through the next June 30." Code (1951), Art. 95A, Sec. 7(c) (5). It is conceded that the rate here applicable is .9%, whereas the full rate in the absence of experience is 2.7%.

The appellant does not seriously contend that the portions of the business that were transferred were not separable, or were not in fact treated for accounting purposes as separate departments by the parent companies, and it is difficult to see how such an argument could be made on the undisputed facts. Instead, the argument is now advanced that the departments were not in fact "a substantial portion" of the business of the parent companies, and that the Board's finding of fact is not reviewable. It is also suggested that if the Maryland statute is construed in such a way as to allow a reduction in the tax rate without relation to the unemployment risk, it may jeopardize the tax set-off allowed to Maryland employers against the Federal tax.

On the first point, it is clear that the language of the Maryland statute, as amended, is broader than that adopted in many states as to transfers of "substantially all the assets" or "substantially all the employing units". See note 22 A. L. R. 2d 673. The cases of Auclair Transp. v. Riley, 69 A. 2d 861 (N. H.); Winakor v. Annunzio, 99 N. E. 2d 191 (Ill.), and Harris v. Egan, 60 A. 2d 922 (Conn.), relied on by the appellant, are distinguishable on this ground. The Indiana statute, referring to "a part of the organization, trade or business" has been given effect. Indiana Employment Security Division v. Ponder, 92 N. E. 2d 224 (Ind. 1950); Mason v. City Cartage Co., 117 N. E. 2d 387 (Ind. App. 1954). See also

*Burlington Truck Lines v. Iowa Employ. Sec. Com'n.*, 32 N. W. 2d 792, and *Cross Country Sportswear Corporation Appeal*, 70 Pa. D. & C. 271. The phrase "substantially all" is the antithesis of "a substantial part". Despite the rule as to strict construction of a tax exemption statute, *Std. Properties v. Emp. Security Bd.*, 201 Md. 1, we have held that a linguistic society having only 2% of its members in Maryland, where its publication was printed, was carrying on "a substantial part" of its activities in Maryland so as to qualify for an exemption. *Shaughnessy v. Linguistic Society*, 198 Md. 446. In the instant case the record shows that the new corporation, under the same control and management, took over some $83,000 worth of assets of the parent corporations and some 77 of their employees. The appellant states in its brief that the assets of the parent companies are many millions of dollars, and their combined employees are 2,800. Nevertheless, we think this was a substantial part of their business, even assuming that the transfer of a separate department, section or division would not in itself satisfy the statute unless substantial.

We find no merit in the contention that the Board's finding is not reviewable. Code (1951), Art. 95A, Sec. 14(c) provides for a review on questions of law, although the findings of the Board on the facts are conclusive "if supported by evidence and in the absence of fraud". The construction of the statute, as applied to undisputed facts, is, of course, a question of law.

On the second point, it may be noted that the acquired experience rating is tentative, and subject to adjustment and recomputation on the basis of actual experience. The legislature, in amending the statute in 1947, may well have had in mind the impediment to a corporate segregation and consolidation of function, if the new enterprise were required to assume the maximum rate for four years, no matter how low its actual labor turnover was. As a matter of fact, the appellee seems to have had a very low turnover and the record does not indicate whether, in fact, the actuarial risk will be more or less

**538**

than that of the parent companies. It is not shown that any objection has been raised by the Federal authorities. Before a taxpayer could be denied credit for the reduced rate, it would appear that there would have to be a finding by the Federal authorities that under the State law the reduced rate does not bear "a direct relation to unemployment risk during not less than three consecutive years immediately preceding the computation date". 26 U. S. C. Ch. 9, § 1602. Even if an objection were raised, we think it would be a matter for the legislature to consider. It is the function of the courts to construe the statute, in accordance with recognized canons of construction, and to give effect to the words used where the meaning is plain. Fears that the statute as construed by us may bring forth objections from the taxing authorities of another jurisdiction could not justify a rewriting of the statute under the guise of construing it. Nor could we properly speculate as to what the economic effect might be upon the compensation fund. *Auclair Transp. v. Riley, supra;* note, 60 *Harv. L. R.* 276.

*Order affirmed, with costs.*