GRAND RAPIDS DRY GOODS COMPANY v. EMPLOYMENT SECURITY COMMISSION.

1. UNEMPLOYMENT COMPENSATION—CONTRIBUTION RATE—CONTINUATION BY CORPORATE SUCCESSOR OF 4 PREDECESSOR EMPLOYERS.

Plaintiff, a corporate purchaser of the entire organization, trade, business and assets of 4 predecessor corporations which had been assigned a 1% contribution rate by defendant employment security commission, was entitled to continuation of such rate after the purchase, instead of 3% rate for new corporations without any experience record, where such predecessors employers' businesses were continued through plaintiff successor (CL 1948, §§ 421.21, 421.22, 421.41).

2. SAME—CONTRIBUTION RATE—CONTINUATION BY CORPORATE SUCCESSOR EMPLOYER.

A new corporation, as successor employer, who acquired all of the business establishments, properties and assets of predecessor corporate employers to which a 1% contribution rate had been assigned is entitled, as a continuing employer, to such contribution rate until the employment security commission has lawfully determined and notified such new employer of a different rate and, where the commission sought to impose a 3% rate as for a new corporation without an experience record, it was incumbent upon the commission to offer proofs in support of a change in rate (CL 1948, §§ 421.21, 421.22, 421.41).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 8.

Unemployment compensation: Right of successor in business to experience or rating of predecessor for purpose of fixing rate of contributions. 22 ALR2d 673.

3. Costs—Public Question—Unemployment Compensation—Contributions.

> No costs are allowed in suit to recover excessive contributions
> assessed by employment security commission, a public ques-
> tion being involved (CL 1948, §§ 421.21, 421.22, 421.41).

Appeal from Kent; Searl (Fred N.), J. Submitted January 8, 1957. (Docket No. 4, Calendar No. 46,-563.) Decided April 22, 1957.

Action by Grand Rapids Dry Goods Company, a Michigan corporation, against the Michigan Employment Security Commission under provision authorizing civil suit for reimbursement of unemployment taxes paid under protest. Judgment for plaintiff. Defendant appeals. Affirmed.

*Warner, Norcross & Judd (Conrad A. Bradshaw, of counsel), for plaintiff.*

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *John J. Long,* Assistant Attorney General, for defendant.

Dethmers, C. J. Defendant appeals from judgment for plaintiff representing recovery of amounts plaintiff paid defendant under protest as contributions or taxes under the Michigan unemployment compensation act* for the last 3 quarters of 1948, and the years 1949, 1950 and 1951.

C. J. Farley & Company, a corporation, and 3 subsidiary corporations which it owned, were engaged for years in the wholesale dry goods business in Grand Rapids with Mr. C. J. Farley as the managing head. The 4 corporations were located at the same Grand Rapids address, all were engaged in the same type of business which was conducted in

---

* CL 1948, § 421.1 *et seq.* (Stat Ann 1950 Rev § 17.501 *et seq.*).

the same office, and orders to all of them were filled from the same warehouse. Late in 1947 the 4 corporations appointed Mr. Farley agent for their liquidation and dissolution. As such agent he carried on the business operations of the corporations until June 1, 1948, on which date he sold all the properties, assets, trade, business, good will, and organization of said corporations, held by him as agent, to the plaintiff, a new corporation organized and owned by him, his wife and daughter. The plaintiff corporation has continued to carry on the business formerly conducted by Mr. Farley as agent and theretofore by the 4 predecessor corporations. The only testimony offered by either side in the case was that of Mr. Farley, who testified, in substance, that: The operations of plaintiff and its predecessors were carried on by salesmen who made calls on the customers. Calls were made about once every 4 weeks. Ninety-five per cent of the sales originated through the salesmen. Twelve salesmen were employed by C. J. Farley & Company and its subsidiaries within the State of Michigan on April 1, 1947, and on November 12, 1947, the date on which the business and assets were transferred to C. J. Farley, agent. Nine salesmen were employed by C. J. Farley, agent, and all 9 of these salesmen continued to be employed by plaintiff. The entire geographical area called on by salesmen of the predecessor companies and by the salesmen of C. J. Farley, agent, was the same as that called on by the salesmen of plaintiff. All of the accounts called on by salesmen of the predecessor companies, as well as C. J. Farley, agent, continued to be called on by the salesmen of plaintiff, with the same lines of merchandise. There was a continuation of the business of C. J. Farley & Company by plaintiff. All of the employees of C. J. Farley, agent, on June 1, 1948 (18 in number) became employees of plaintiff. The assets trans-

ferred by C. J. Farley, agent, to plaintiff and the taking over of the employees constituted a transfer of the entire organization of C. J. Farley, agent, and carried with it a transfer of the trade and business of C. J. Farley, agent. The trade and business so transferred constituted the same trade and business which had been enjoyed by the predecessor companies in the State of Michigan during the year 1947. The assets transferred gave rise to substantially all of the wages paid by the previous companies within the State of Michigan. The nationally branded lines of merchandise carried by C. J. Farley & Company and its subsidiaries, and C. J. Farley, agent, and plaintiff were the same. Plaintiff continued to buy merchandise from the same sources from which its predecessors had been buying merchandise for many years.

Defendant had assigned to the 4 original corporations a 1% contribution rate under the act and thereafter had recognized C. J. Farley, agent, as successor to the 4 corporations and assigned to him, as such agent, the same 1% rate. Following the transfer of business and assets from him as agent to plaintiff corporation, defendant declined to recognize plaintiff as the successor employer under the act, entitled to acquire the experience record and index of its predecessor employers and, hence, to pay the tax or contribution at the 1% rate warranted thereby. Instead, defendant took the position that plaintiff was a new employer without experience record or index under the act and for that reason required to pay at the 3% rate fixed by statute for new employers without such record or index. Thereupon the plaintiff paid the tax at the 3% rate for the mentioned period, paying under protest so much

thereof as represented payment in excess of 1%, and the suit and judgment are for such excess.* .

Applicable and controlling provisions of the statute are as follows:

"Sec. 21. (a)   *   *   *   The commission shall also notify each employer, not later than December 31 next following the computation date, of his rate of contribution as determined for any calendar year pursuant to section 19 of this act and any such statement or determination shall be final unless, within 15 days after such notification the employer files an application for review and redetermination, in accordance with the provisions of section 32a of this act:   *   *   *

"(c) Any contribution becoming due and payable while a rate determination is under review or protest may be paid at the rate assessed by the commission for the previous year, but it shall be adjusted by the commission when the proper rate is determined."   CL 1948, § 421.21 (Stat Ann 1950 Rev § 17.522).

"Sec. 22. (a) For the purpose of sections, 17, 18, 19 and 20 of this act, as of September 30th of a calendar year the experience records of 2 or more employers may be combined and mingled as if they constituted the experience record of a single employer, if the commission finds that the purchaser of an organization, trade or business is a successor as defined in section 41(2) and that 1 of the following circumstances exists:

"(1) That an employer has acquired the organization, trade or business, or substantially all the assets thereof, of a predecessor employer which at the time of such acquisition was an employer subject to this act, and immediately after such acquisition substantially all the employing enterprises of such predecessor employer are continued solely through the

---

* For provision permitting civil suit for reimbursement as it existed when this action was instituted, see CLS 1954, § 421.15, subd (d) (Stat Ann 1953 Cum Supp § 17.515, subd [d]).—REPORTER.

employer which has acquired such organization, trade or business, and has accepted responsibility for any unpaid contribution due and payable at the time of such acquisition; or  *  *  *

"(c) In the interpretation of this section, substantially all of the employing enterprises of a predecessor employer shall be deemed to be continued solely through a single employer as successor thereto if the commission finds that the successor has acquired business establishments or properties, or other trade or assets, the operation of which during the last 4 completed calendar quarters involved more than 95 per cent of the aggregate wages payable for employment by the predecessor employer during such period." CL 1948, § 421.22 (Stat Ann 1950 Rev § 17.524).

"Sec. 41.  *  *  *  'Employer' means:  *  *  *

"(2) Any individual legal entity or employing unit which acquired the organization, trade or business, or substantially all the assets thereof, of another which at the time of such acquisition was an employer subject to this act." CL 1948, § 421.41 (Stat Ann 1950 Rev § 17.543).

Defendant admits that plaintiff established at trial that it was a successor employer as defined in section 41(2), but contends that plaintiff's case must fail for lack of proof that, as required under section 22(c), it had acquired business establishments or properties, or other trade or assets, the operation of which during the previous 4 calendar quarters involved more than 95% of the aggregate wages paid by its predecessors during that period. In this connection defendant places strong reliance on *Russ Dawson, Inc.,* v. *Unemployment Compensation Commission,* 334 Mich 82, 88, which held that section 22(c) "is a mandate from the legislature, providing a basis for determining when a successor employer is entitled to the experience record of its predecessor." In that case the predecessor sold part of its

business to one successor and the remainder to another. The question presented was whether the latter qualified as a successor employer entitled to the benefit of the predecessor employer's experience record. Clearly the test imposed by section 22(c) is determinative of the question under such circumstances, where the business has been split. In the instant case the proofs are that plaintiff took over the entire business of the predecessors, called on the same trade, handled the same accounts and continued the business in its entirety as one, single going concern. The test of section 22(c) was established for the purpose of determining whether, immediately after a successor has acquired a predecessor employer's organization, trade, business or assets, "substantially all the employing enterprises of such predecessor employer are continued solely through" such successor. In the case at bar everything that went to make up the predecessors' employing enterprises was transferred to plaintiff and immediately thereafter was continued, and ever since has been continued, solely through the plaintiff. Consequently, the percentage problem to which the test of section 22(c) is addressed is not here involved. We think the proofs establish that the conditions of section 22 were met and that plaintiff became entitled to the experience record and index of its predecessors.

Defendant also urges that plaintiff's proofs fail to show that its experience record, even if combined with that of its predecessors, has entitled it to continuance of the 1% rate. Under section 21(a) defendant was obligated to determine and notify plaintiff of its rate of contribution as successor employer. This the defendant failed to do, treating plaintiff, instead, as a new employer obligated, not by a determination of defendant but by statute, to pay at the rate of 3%. This the plaintiff protested. Under

section 21(c) plaintiff, as successor, was and is entitled to continue payment at its predecessor employers' rate of 1% so long as the demanded 3% rate was under protest or review and until defendant had lawfully determined and notified plaintiff of a rate different than 1%, proofs in support of which it was incumbent upon defendant to offer in this suit.

Other questions concerning the correctness of instructions to the jury and refusal to submit special questions as requested are not of controlling importance and need not be discussed under our above stated views of the law.

Affirmed, without costs, a public question being involved.

SHARPE, SMITH, EDWARDS, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.